UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE MARIE OLESZCZAK, for herself and on behalf of C.O., | ) ) ) |
| Plaintiff, | ) 17 C 933 ) ) Judge Gary Feinerman |
| vs. | ) ) |
| ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, BEVERLY J. WALKER, DEBORAH FOLGA, PATRICIA PINKNEY, ANDRIJ SKYBA, SAJI MANACHJMERIL, SUSAN COHEN, and THERESA JACKSON, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Christine Marie Oleszczak, on behalf of herself and purportedly on behalf of her minor son, C.O., brought this suit against the Illinois Department of Children and Family Services ("DCFS"), Beverly Walker in her official capacity as Acting Director of DCFS, and several DCFS employees in their individual capacities under 42 U.S.C. §§ 1983, 1985, 1986, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Illinois law. Doc. 61. Oleszczak alleges that DCFS repeatedly investigated her treatment of C.O. and improperly found that she had been abusive, resulting in their separation. DCFS, Walker, and three of the DCFS employees (Patricia Pinkney, Deborah Folga, and Susan Cohen) move under Civil Rule 12(b)(6) to dismiss the operative complaint's claims against them. Docs. 68, 109. The motions are granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N.*

1

*Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Oleszczak's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Oleszczak as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

C.O. was born in November 2006 with several congenital defects. Doc. 61 at p. 2, ¶ 1. Following allegations of abuse or neglect by C.O.'s father, Michael Oleszczak, DCFS began investigating Oleszczak in December 2006. *Id*. at pp. 2-3, ¶¶ 1-2. The matter was "indicated," which means that DCFS believed that Michael's allegations had been substantiated. *Id*. at p. 2, ¶ 1. Oleszczak sought review, and the administrative law judge ("ALJ") found that the evidence did not support the indicated finding and further that DCFS investigators had failed to include exculpatory evidence in their investigative file. *Id*. at p. 3, ¶ 2.

Between December 2006 and August 2007, DCFS opened three other matters against Oleszczak. *Id*. at p. 3, ¶ 3. Two were determined to be "unfounded," and no action was taken on the third. *Ibid*. Still, the investigations resulted in significant intrusions into Oleszczak's life, including visits to her home and C.O.'s hospital room. *Ibid*.

On August 5, 2007, C.O. was admitted to pediatric intensive care and underwent open heart surgery on September 12. *Id*. at p. 3, ¶¶ 5, 8. On September 21, Oleszczak was indicated once again based on allegations from Michael. *Id*. at pp. 3-4, ¶¶ 6, 9. DCFS investigators Saji

Manachjmeril and Andrij Skyba—both defendants in this suit—told Oleszczak that if she did not sign a DCFS-drafted safety plan, she would be removed from C.O.'s hospital room and not allowed to return. *Ibid*. Oleszczak also was told that her failure to sign the safety plan would result in C.O. being immediately taken into state custody. *Id*. at pp. 3-4, ¶ 9.

DCFS authorized the hospital to discharge C.O. to Michael, in defiance of a state court order of protection. *Id*. at p. 4, ¶ 10. While residing with Michael, C.O. was not provided with a variety of therapeutic interventions recommended by the Illinois health authorities that Oleszczak had been providing since birth. *Id*. at p. 4, ¶¶ 11-12. DCFS did not intervene to force Michael to continue the therapies, and Manachjmeril told Oleszczak that she was not allowed to take C.O. to therapy. *Id*. at p. 4, at ¶ 12. Oleszczak appealed the 2007 indicated finding, and in March 2008 the ALJ held that the matter was unfounded. *Id*. at p. 4, ¶ 14.

C.O. remained with Michael until 2009, when Oleszczak was awarded full legal custody. *Id*. at p. 4, ¶¶ 15-16. In June 2013, another DCFS investigation into Oleszczak commenced. *Id*. at p. 4, ¶ 17. Oleszczak was told by DCFS that C.O. would have to stay with Michael or go to foster care pending the investigation. *Ibid*. In August 2013, DCFS informed Oleszczak that if she did not sign a safety plan, C.O. would go to foster care. *Id*. at p. 5, ¶ 18.

In December 2013, DCFS began another investigation into Oleszczak. *Id*. at p. 5, ¶ 21. C.O. stayed with Michael during the investigation. *Id*. at p. 5, ¶¶ 21-22. In January 2014, Theresa Jackson—also a defendant—provided Michael with a letter stating that he had been given physical custody of C.O. because Oleszczak was unable to care for him. *Id*. at p. 5, ¶ 26. Michael used the letter to have C.O. transferred to a new school. *Id*. at p. 5, ¶ 27.

On February 10, 2014, Debra Folga—also a defendant—told Oleszczak that Michael was going to sue for full custody and would prevail. *Ibid*. Oleszczak asked Folga to send her some

3

paperwork so she could appeal the latest indicated finding, but she never received the materials she requested. *Id*. at 5, ¶ 28. Nonetheless, Oleszczak managed to seek review before an ALJ. *Ibid*. After DCFS again reviewed the indicated finding, it agreed to "voluntarily unfound" the matter. *Id*. at p. 6, ¶ 34. When C.O. was returned to Oleszczak in July 2014, he had "tooth decay, no glasses and no insurance." *Id*. at p. 6, ¶ 36.

In late January 2015, DCFS commenced another investigation into Oleszczak. *Id*. at p. 6, ¶ 42. At some point during that time frame, Michael called the DCFS hotline. *Id*. at p. 7, ¶ 48. On February 5, 2015, after C.O. was dropped off at school, Pinkney—also a defendant—called Oleszczak to say that she was at Oleszczak's apartment for a "home safety check." *Id*. at p. 6, ¶¶ 38, 40. Pinkney told Oleszczak that she had confirmed with the police that Oleszczak had been arrested for battery and that Folga, Pinkney's supervisor, had approved the issuance of a new safety plan. *Id*. at p. 6, ¶ 40. Pinkney demanded that Oleszczak sign the safety plan and allow Pinkney into her home, but Oleszczak refused. *Id*. at p. 6, ¶¶ 40-41.

That day, Pinkney took C.O. out of his classroom and interviewed him, and then told school staff that that C.O. would leave with Michael and that they should call the police if Oleszczak entered school grounds; with Folga's approval, Pinkney turned C.O. over to Michael. *Id*. at p. 7, ¶ 47. Prior to taking those actions, Pinkney "did not interview anyone or investigate anything." *Id*. at p. 7, ¶ 46. The safety plan stated that Michael should obtain an emergency order of protection against Oleszczak, that Oleszczak would undergo substance abuse treatment and a mental health evaluation, that C.O. would reside with Michael, and that Oleszczak would not be allowed unsupervised visits with C.O. *Id*. at p. 7, ¶ 48. At that time, Michael was a "non-custodial parent." *Id*. at p. 7, ¶ 47. Michael obtained an emergency order of protection on

February 9, 2015.  *Id*. at p. 7, ¶ 49.  Oleszczak did not receive a hearing on that motion.  *Id*. at p. 7, ¶ 51.

Weeks later, Pinkney went to C.O.'s school to interview school staff.  *Id*. at p. 7, ¶ 44.  During the interviews, Pinkney "fed false information to" the interviewees.  *Id*. at p. 7, ¶ 45.

Oleszczak attempted to seek review before an ALJ, but the case was dismissed because the allegations giving rise to DCFS's investigation had been raised in civil court during the emergency order of protection proceedings.  *Id*. at p. 7, ¶ 50.  Michael obtained a plenary order of protection, giving him temporary legal custody of C.O., on February 26, 2015, and was awarded sole physical custody of C.O. on July 2.  *Id*. at p. 7, ¶ 51; Doc. 70 at 6.  Oleszczak was later found not guilty of the battery charge that Pinkney had mentioned.  Doc. 61 at p. 7, ¶ 53.  Oleszczak "maintains [that any] allegations of substance abuse [or of] her mental health posing a danger to her child are false and baseless."  *Id*. at p. 7, ¶ 52.

## Discussion

### I. Oleszczak May Not Sue on Behalf of C.O.

Defendants contend that Oleszczak cannot seek relief on C.O.'s behalf because she is proceeding *pro se*.  Doc. 70 at 9-10.  As a general matter, "a person may appear in the federal courts only *pro se* or through counsel," and thus ordinarily a "next friend may not, without the assistance of counsel, bring suit on behalf of a minor party."  *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010).  There are exceptions to this rule; for example, parents may "bring claims *pro se* on behalf of their children in an effort to secure social security benefits."  *Ibid*.  However, "no comparable exception has ever been recognized for a lawsuit based on § 1983 or general state tort law."  *Ibid*.  Those are precisely the claims that Oleszczak purports to bring on C.O.'s behalf.  (Oleszczak's ADA and Rehabilitation Act claims are brought only on her behalf.)

5

In response, Oleszczak says only that if the court denies her motion for attorney representation—which it has, Docs. 6, 22, 126—she will voluntarily dismiss C.O. from this suit. Doc. 84 at 2. She has thus forfeited any contention she might have had to support her ability to pursue claims on C.O.'s behalf. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."). Accordingly, the claims that Oleszczak purports to bring on C.O.'s behalf are dismissed. *See Mackall v. Cathedral Trustee, Inc.*, 465 F. App'x 549, 551 (7th Cir. 2012) ("We agree with the district court that [the plaintiffs] could not maintain their claims on behalf of their children. Parents who are not attorneys must have aid of counsel to represent their children in federal court for claims brought under § 1983."); *Davis v. City of Indianapolis*, 2016 WL 3951743, at *3 (S.D. Ind. July 22, 2016) ("Mr. Davis is not an attorney and does not have authority to appear as his children's legal representative in this action. Accordingly, Mr. Davis' children are dismissed from this action and no relief may be sought on their behalf.").

## II. Oleszczak's § 1983 Claims Are Not Time Barred.

Defendants argue that the two-year statute of limitations for § 1983 claims brought in Illinois bars Oleszczak's claims insofar as they allege conduct prior to February 3, 2015—two years before she filed this suit. *See Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("To sum up, we reiterate our holding that the limitations period applicable to *all* § 1983 claims brought in Illinois is two years … ."). Most of Oleszczak's allegations concern conduct occurring before February 8, 2015. However, under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2001), although "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," acts falling outside the limitations period "will not be time barred so long as all acts

which constitute the claim are part of the same unlawful … practice and at least one act falls within the [limitations] period." *Id*. at 113, 122; *see also Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1037 n.19 (7th Cir. 2003) (applying *Morgan* to a § 1983 claim).

As Defendants acknowledge, some conduct alleged by Oleszczak—specifically, matters that arose in the wake of the January 2015 investigation—occurred within the limitations period. Doc. 70 at 8. Defendants contend, however, that each investigation into Oleszczak's treatment of C.O. was a "separate and distinct action." Doc. 93 at 5-6. Yet Oleszczak maintains that the investigations were all part of a single course of conduct, noting that DCFS relied on a 2007 "open intact family case" as the basis for a 2013 investigation and that there was still an "open intact family case[]" as of October 2017. Doc. 84 at 2.

Oleszczak's allegations regarding a connection among the various investigations over the years, while thin, are sufficient at the Rule 12(b)(6) stage to forestall dismissal. "[A] statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," unless the plaintiff's allegations "reveal that relief is barred by the applicable statute of limitations." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Assuming the truth of Oleszczak's allegations and drawing all reasonable inferences in her favor, the court cannot hold on the pleadings that the claims arising from the earlier investigations do not bear a close enough relationship to the claims arising from the 2015 investigation to fall within the *Morgan* rule.

**III.    DCFS and Walker Are Entitled to Sovereign Immunity on Some Claims but Not Others.**

Defendants next contend that DCFS and Walker—who is sued only in her official capacity as DCFS's Acting Director, making her the equivalent of DCFS, *see Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012)—should be dismissed on sovereign immunity

grounds. Doc. 70 at 7. Sovereign immunity "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). Such immunity is subject to "three exceptions": (1) "a state may waive immunity by consenting to suit in federal court"; (2) "Congress may abrogate the state's immunity through a valid exercise of its powers"; and (3) "under the *Ex parte Young* doctrine, a plaintiff may file suit[] against state officials seeking prospective equitable relief for ongoing violations of federal law." *Ibid.* (internal quotation marks omitted).

Title II of the ADA "abrogates state sovereign immunity … for … claims that independently violate the Constitution." *Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010). Because Defendants do not contend that the operative complaint fails to allege an ADA claim that independently violates the Constitution, the ADA claim against DCFS and Walker is not barred by sovereign immunity, at least as the matter appears at the pleading stage. *See Simmons v. Godinez*, 2018 WL 2391116, at *2 (N.D. Ill. May 25, 2018) ("[W]here a prisoner alleged not only an ADA claim, but also a claim that the defendants' conduct violated his right to medical treatment under the Constitution, [the Illinois Department of Corrections] did not have Eleventh Amendment immunity."). Sovereign immunity also presents no barrier to the Rehabilitation Act claim. *See Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (noting that "states have waived their immunity [to Rehabilitation Act claims] as a condition of receiving federal funds"); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000) ("We … agree … that the Rehabilitation Act is enforceable in federal court against recipients of federal largess.").

The court need not decide whether Oleszczak's §§ 1983, 1985 and 1986 claims are barred by sovereign immunity, because state agencies may not be sued under those statutes. *See Anderson v. U.S. Dep't of Agric.*, 604 F. App'x 513 (7th Cir. 2015) (§ 1986); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (§§ 1983 and 1985). And because the state law claims alleged by Oleszczak—false arrest, assault, battery, false imprisonment, and malicious prosecution—are not tied to DCFS or Walker, those claims are dismissed on the merits as to those defendants.

In sum, while Oleszczak's §§ 1983, 1985 and 1986 and state law claims against DCFS and Walker are dismissed, sovereign immunity does not defeat her ADA and Rehabilitation Act claims against them.

## IV. Oleszczak States an ADA Discrimination Claim.

"To establish a violation of Title II of the ADA, [a] plaintiff must prove [1] that he is a qualified individual with a disability, [2] that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotation marks omitted). Defendants contend that Oleszczak's ADA claim should be dismissed because she makes "no factual assertions that DCFS conducted the various investigations against her because she suffered from depression" or "acted on the basis of [this] alleged disability." Doc. 70 at 14.

True, much of the operative complaint suggests that DCFS's investigations into Oleszczak *caused* her depression, not that they *resulted from* her depression. But Oleszczak also claims that DCFS's "allegations of … her mental health posing a danger to her child are false and baseless," from which a reasonable inference could be drawn that DCFS targeted her due to her mental health issues. Doc. 61 at p. 7, ¶ 52. And Oleszczak's response brief asserts that

9

DCFS's documentation of her "alleged mental health issues" was discriminatory given that there was no evidence that it led her to abuse or neglect C.O. Doc. 84 at 3. Read with all reasonable inferences drawn in Oleszczak's favor, those allegations suggest that Defendants' actions—and their determination at various points that she posed a danger to C.O. or otherwise failed to provide him with a safe environment—were based in part on her actual or perceived mental health challenges. That suffices to forestall dismissal at this stage. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (holding that a plaintiff need only plead "a plausible claim, after which he receives the benefit of imagination, so long as the hypotheses are consistent with the complaint") (internal quotation marks omitted).

V. **Oleszczak States a Substantive Due Process Claim Against Pinkney and Folga.**

DCFS contends that Oleszczak has no viable substantive due process claim against Pinkney and Folga. Precedent holds that substantive due process protects an individual's interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion). State officials can violate substantive due process when they unjustifiably separate parents from their children. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1019 (7th Cir. 2000). In addressing such a claim, the court must "balance … the fundamental right to the family unit and the state's interest in protecting children from abuse," and evaluate whether the state official had "some definite and articulable evidence giving rise to a reasonable suspicion that a child ha[s] been abused or [is] in imminent danger of abuse." *Heck*, 327 F.3d at 521 (internal quotation marks omitted); *see also Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012) (same); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478-79 (7th Cir. 2011) (same).

Oleszczak has stated a substantive due process claim against Pinkney. She alleges that prior to her "illegal seizure of C.O.," Pinkney did not "interview anyone or investigate anything"

10

and then "fed false information" to those individuals she interviewed. Doc. 61 at pp. 6-7, ¶¶ 44-47. Granted, the complaint also alleges that Pinkney told Oleszczak that she had "confirmed with the Berwyn Police Dept. that [Oleszczak] had been arrested for battery," and alludes to the fact that Michael called the DCFS hotline prior to that investigation. *Id*. at p. 6, ¶ 40; *id*. at p. 7, ¶ 48. But drawing all reasonable inferences in Oleszczak's favor, the fact that Pinkney knew of the battery charge does not necessarily mean that she had a reasonable belief that Oleszczak had abused C.O. or that he was in imminent danger of abuse. And Pinkney's alleged efforts to fabricate evidence after the fact suggests that she lacked a legitimate interest in taking steps that had the effect of interfering with Oleszczak's right to see or have custody of C.O. *See Brokaw*, 235 F.3d at 1011-12, 1018-19 (holding that a substantive due process claim premised on the removal of a child from his parents based on unspecified allegations of neglect could survive dismissal where the court could not conclude from the pleadings that the removal was reasonable, particularly where it was alleged that the defendants "knew the allegations of child neglect were false, or withheld material information, and nonetheless caused or conspired to cause child's removal"); *Young v. Sproat*, 2016 WL 659657, at *3-4 (C.D. Ill. Feb. 18, 2016) (same, where the plaintiff alleged that the defendants deprived her of her parental rights "based on knowingly false information").

As Defendants observe, the state court issued several orders of protection against Oleszczak. Docs. 70-1, 70-2, 70-3. Yet Oleszczak alleges that Pinkney failed to conduct a proper investigation prior to C.O.'s removal and that she was not provided a hearing regarding the orders of protection before they were entered. Doc. 61 at p. 7, ¶ 51. And at least one of the orders was issued during roughly the same period that Oleszczak alleges that Pinkney began fabricating evidence to support C.O.'s continued separation from her. *Id*. at p. 6, ¶ 44. Drawing

11

all reasonable inferences in Oleszczak's favor, the state court orders, which allegedly were based solely on Michael's testimony and Pinkney's efforts to paint her as a danger to C.O., at this point cannot shield Pinkney from Oleszczak's substantive due process claim.

Nor is Defendants' contention that DCFS never took "custody of C.O.," and instead only put a safety plan in place for several days before Michael was granted custody, an ironclad defense to the substantive due process claim. Doc. 93 at 2-3. The Seventh Circuit has held that where parents are "given the option of accepting the offer of a safety plan," and where their acquiescence is not obtained via duress, no violation of their substantive due process rights occurs. *Dupuy v. Samuels*, 465 F.3d 757, 762 (7th Cir. 2006); *see also Hernandez*, 657 F.3d at 483-84. Yet the principal basis for the Seventh Circuit's holding that implementation of a safety plan does not necessarily implicate due process is that "the decision to agree to a safety plan is optional," *Dupuy*, 465 F.3d at 761, and here Oleszczak alleges that she never consented to the February 2015 safety plan that removed C.O. from her care.

Oleszczak's substantive due process claim may proceed against Folga as well. The complaint alleges that Folga gave her approval for Pinkney "to sign a Safety Plan with [Michael]" in February 2015. Doc. 61 at p. 6, ¶ 40. Read with all reasonable inferences drawn in Oleszczak's favor, this allegation suggests that Folga approved Pinkney's decision to sign and implement a safety plan *only* with Michael, and without Oleszczak's consent, even though Pinkney had not undertaken any investigation to determine if the plan was necessary.

Pinkney and Folga seek dismissal of Oleszczak's substantive due process claim on qualified immunity grounds. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*,

615 F.3d 877, 881 (7th Cir. 2010). Dismissal on qualified immunity grounds is improper at the pleading stage of this case because the particular facts surrounding the alleged violations—what, if any, investigation Pinkney undertook, and the reason for Pinkney and Folga's decision to remove C.O. from Oleszczak's care—are presently unclear, making it impossible to say whether a reasonable person in their shoes would have known that their conduct violated clearly established law regarding the removal of minors or the implementation of safety plans. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[W]e note that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate … .") (citation omitted); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal."). Facts adduced in discovery may cast the qualified immunity issue in a different light, and Pinkney and Folga may renew their argument on summary judgment.

**VI.     Oleszczak States a Procedural Due Process Claim Against Pinkney and Folga.**

Defendants contend that Pinkney and Folga did not violate Oleszczak's procedural due process rights in conducting the 2015 abuse investigation, arguing that the procedural protections afforded Oleszczak—the opportunity for a hearing to challenge the decision to indicate her for abuse or neglect—provided her all the process she was due. Doc. 70 at 11. A court must "undertake a two-part analysis in procedural due-process cases: first, [it must] determine whether the plaintiff was deprived of a protected interest; if so, [it must] determine what process was due under the circumstances." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016).

There is little question that Oleszczak has a protected liberty interest in "familial relations" and that Pinkney's and Folga's actions interfered with that right. *Brokaw*, 235 F.3d at

1020.  Given Oleszczak's allegation that DCFS's indication of her for abuse or neglect—and the consequences that flowed from it, including her separation from C.O.—occurred because Pinkney failed to conduct a proper investigation and then solicited false information from potential witnesses to buttress the decision after the fact, and that Pinkney acted with Folga's approval, Oleszczak has stated a due process claim against those two defendants.  *See Brokaw*, 235 F.3d at 1021 (holding that the plaintiff stated a procedural due process claim because "no matter how much process is required, at a minimum it requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents," and further that due process "means that government officials will not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances"); *cf. Hernandez*, 657 F.3d at 486 (holding that a state official may not misrepresent facts to obtain a child's removal).  And for the reasons stated above, it would be premature at this stage to hold that Pinkney and Folga are entitled to qualified immunity.

**VII.    Oleszczak's Double Jeopardy Claim Is Dismissed.**

DCFS contends that Oleszczak's double jeopardy claim should be dismissed because the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense."  Doc. 70 at 14 (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)).  "The Double Jeopardy Clause provides that no person shall be subject for the same offence to be twice put in jeopardy of life or limb.  While the Clause protects against the imposition of multiple criminal punishments for the same offense, it has long been recognized that the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could in common parlance be described as punishment." *Turner v. Glickman*, 207 F.3d 419, 427 (7th Cir. 2000) (internal citations and quotation marks omitted).

14

No precedent of which this court is aware suggests that an investigation or safety plan, or even the removal of a child from a parent's custody, qualifies as a criminal punishment for purposes of double jeopardy. To the contrary, courts have uniformly held that double jeopardy is not implicated in this context. *See Smith v. Dinwiddie*, 510 F.3d 1180, 1188-89 (10th Cir. 2007) (holding that a State's "deprived-child/termination proceedings" are civil for the purposes of the Double Jeopardy Clause); *Ottremari by McDaniel v. Kan. Soc. and Rehabilitative Serv.*, 871 F. Supp. 1331, 1337 (D. Kan. Nov. 21, 1994) (same). Oleszczak's double jeopardy claim accordingly is dismissed.

**VIII. Oleszczak's State Law Claims Survive Dismissal.**

Invoking state law immunity, DCFS contends that Oleszczak's state law claims should be dismissed because "state employees are fully protected from liability for acts falling within the discretion of their position." Doc. 70 at 15. There are two possible sources of immunity: the common law "public official immunity" doctrine, *see Mich. Ave. Nat. Bank v. Cnty. of Cook*, 732 N.E.2d 528, 543 (Ill. 2000), and the Illinois Tort Immunity Act, 745 ILCS 10/2-202. Common law immunity does not extend to "(1) [a] public employee's acts based on corrupt or malicious motives or (2) [a] public employee's willful and wanton acts." *Munizza v. City of Chicago*, 583 N.E. 2d 561, 564-65 (Ill. App. 1991). The same holds for statutory immunity. *See Phipps v. Adams*, 2012 WL 686721, at *4 (S.D. Ill. Mar. 2, 2012) (citing 745/ILCS 10/2-202, which provides that a public employee shall not be liable for his acts when executing or enforcing a law unless the acts "constitute[] willful and wanton conduct").

The gravamen of Oleszczak's suit is that her son was repeatedly removed from her care due to biased, baseless, or incompetent investigations into accusations that she abused C.O., and that, to effectuate this outcome, Defendants improperly threatened her and fabricated evidence.

15

At this stage of the case, the court must credit those allegations, which arguably implicate the willful and wanton conduct exception to state law immunity.

**IX.     Oleszczak's Claims Against Cohen Are Dismissed.**

Cohen seeks dismissal on the ground that the operative complaint makes no specific factual allegations against her. Doc. 109 at 2-3. Cohen is correct, so the claims against her are dismissed. *See Black v. Lane*, 22 F.3d 1395, 1401 & n.8 (7th Cir. 1994) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."). Moreover, by failing to respond to Cohen's motion, Oleszczak forfeited any arguments she might have asserted against dismissal. *See Firestone Fin. Corp.*, 796 F.3d at 825.

**Conclusion**

For the foregoing reasons, Oleszczak's §§ 1983, 1985, 1986 and state law claims against DCFS and Walker in her official capacity, claims against Cohen, claims on C.O.'s behalf, and double jeopardy claim are dismissed. The other claims survive dismissal. Defendants shall answer the surviving portions of the operative complaint by July 30, 2018.

July 16, 2018

_____
United States District Judge